IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MARIA E. ENRIQUEZ REYES,<br><br>      Petitioner,<br><br>vs.<br><br>KRISTI NOEM, in her capacity as Secretary of the Department of Homeland Security; PAMELA BONDI, in her capacity as United States Attorney General; TODD LYONS, in his capacity as Acting Director of Immigration and Customs Enforcement ("ICE"); SAM OLSON, in his capacity as ICE St. Paul Field Office Director; and MATT MCCLEARY, in his capacity as Muscatine County Jail Administrator,<br><br>      Respondents. | Case No. 3:25-cv-00114-SHL-SBJ<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION** |

**I.    INTRODUCTION.**

Federal officials have initiated removal proceedings against Petitioner Maria E. Enriquez Reyes, a citizen of Mexico who has lived in the United States since September 2023. Pending completion of the removal proceedings, Petitioner has been detained without a bond hearing. She argues that this violates her statutory and due process rights and therefore asks for a preliminary injunction requiring federal officials to give her a bond hearing within seven days. (ECF 2.) The Court concludes that Petitioner is likely to succeed on her claims and has established irreparable harm, and thus GRANTS her Motion for Preliminary Injunction.[1]

**II.   FINDINGS OF FACT.**

The material facts are not in dispute. Petitioner entered the United States on September 23, 2023, without being admitted or paroled. (ECF 13, p. 3; ECF 11, p. 3, ¶¶ 13–14.) She was detained by a Border Patrol Agent who "did not annotate any negative actions by [Petitioner]" when she was apprehended after entering the country. (ECF 11, p. 10.) Petitioner stated at the time she was apprehended that she and her family members "fear persecution or torture if returned to their

---

[1] Petitioner also requested a temporary restraining order. This request is moot.

country of citizenship [Mexico]." (Id., p. 11.) She was released on her own recognizance and issued a Notice to Appear by U.S. Immigrations and Customs Enforcement ("ICE"). (Id.)

The Notice to Appear alleged that Petitioner was subject to removal pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), as amended. (ECF 13, p. 3.) The Notice to Appear ordered her to appear before an Immigration Judge in Omaha, Nebraska, on January 28, 2027. (Id.) On February 5, 2025, ICE canceled the Notice to Appear and placed Petitioner into removal proceedings pursuant to a memo issued on January 23, 2025, entitled "Guidance Regarding How to Exercise Enforcement Discretion." (ECF 11, p. 10.) ICE also issued an Interim Notice Authorizing Parole allowing Petitioner to remain on parole for one year "unless ICE provides you with an extension at its discretion." (ECF 13, p. 5.) The Interim Notice said "[p]arole is entirely within the discretion of ICE and can be terminated at any time and for any reason." (Id.) It also said parole was contingent upon Petitioner complying with the terms and conditions of release. (Id.) The same month, Petitioner submitted a Form I-589, Application for Asylum and for Withholding of Removal. (Id., p. 6.) ICE acknowledged receipt of her Form I-589 on February 13, 2025. (Id.) Petitioner seeks asylum "to escape persecution by Mexican cartels now recognized as terrorist organizations in the United States." (ECF 2, p. 6.)

On May 30, 2025, ICE informed Petitioner that the asylum office could not process her Form I-589. (ECF 13, p. 15.) It told her, however, that she could have her "claim of fear considered by an asylum officer through the credible fear screening process pursuant to 8 CFR 208.30" and explained the process for scheduling a credible fear interview. (Id.) On September 8, 2025, an ICE Supervisory Detention Deportation Officer told Petitioner's attorney that it "looks like they are in the process of scheduling an asylum interview." (Id., p. 17.)

Petitioner alleges that she was arrested on September 2, 2025, after attending a regularly scheduled check-in appointment at an ICE office in Cedar Rapids, Iowa. (ECF 1, ¶ 3.) She was detained and eventually placed in ICE custody at the Muscatine County Jail, where she remains in custody today. (Id., ¶¶ 3, 8; ECF 11, p. 4, ¶ 19.) On September 10, 2025, ICE issued a Notice to Appear alleging that Petitioner was subject to removal pursuant to Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the INA based on her: (a) being "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General"; and (b) being "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border

2

crossing card, or other valid entry document required by the [INA.]" (ECF 11, pp. 5–8.) Although an earlier document identified Petitioner as having been placed in expedited removal proceedings (ECF 11, p. 9), the Government reports that she "is not currently considered to be in 'Expedited Removal' proceedings, although she is subject to removal." (ECF 10, p. 2.)

Petitioner's case is scheduled for an in-person hearing on December 19, 2025, in the Immigration Court. (Id., p. 3.) Petitioner sought to be released on bond pending that hearing, but on October 1, 2025, an Immigration Judge denied her request for lack of jurisdiction based on a recent ruling from the Board of Immigration Appeals ("BIA"), *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (Sept. 5, 2025), which held that immigration judges lack jurisdiction to award bond to any applicant for admission, even those who have lived in the United States for years without lawful status. (ECF 11, p. 4, ¶ 15; id., p. 12.)

Petitioner asserts that the BIA's holding is incorrect and asks the Court to enter preliminary injunctive relief requiring the Immigration Court to hold a bond hearing within seven days, among other relief. (ECF 1; ECF 2.) The Federal Defendants[2] resist on two grounds: (i) the Court lacks jurisdiction over Petitioner's claims; and (ii) the Immigration Judge correctly concluded that he lacked jurisdiction to release Petitioner on bond. (ECF 10.)

### III. PRELIMINARY INJUNCTION STANDARDS.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 664 (8th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "[T]he burden of establishing the propriety of an injunction is on the movant." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) (quoting *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). The Court must consider four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (alteration in original) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). "While 'no single factor is determinative,'

---

[2] The "Federal Defendants" include the following: Kristi Noem, Secretary of the Department of Homeland Security; Pam Bondi, Attorney General; Todd M. Lyons, Acting Director of ICE; and Sam Olson, the St. Paul ICE Field Office Director.

the probability of success factor is the most significant." *Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020) (quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013)).

As to the remaining three factors, a plaintiff "is not required to prove with certainty the threat of irreparable harm, but it must prove that 'irreparable injury is likely in the absence of an injunction.'" *Sleep No. Corp.*, 33 F.4th at 1018 (quoting *Winter*, 555 U.S. at 22). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "In balancing the equities, [the Court] weigh[s] 'the threat of irreparable harm' shown by the movant against 'the injury that granting the injunction will inflict on other parties litigant.'" *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (quoting *Dataphase Sys.*, 640 F.2d at 113.) This "requires a court to distinguish between 'weak or illusory injuries' and 'very real threats' of injuries." *Rodriguez v. Molina*, 608 F. Supp. 3d 791, 798 (S.D. Iowa 2022) (cleaned up) (quoting *Sak v. City of Aurelia*, 832 F. Supp. 2d 1026, 1046 (N.D. Iowa 2011)). It considers harm to both the litigants and other interested parties, like the public. *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1047 (N.D. Iowa 2008). The last factor, the public interest, "invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious." *Id*. at 1048.

**IV.    LEGAL ANALYSIS.**

    *A.  The Court Has Jurisdiction to Review Petitioner's Claims.*

The Federal Defendants argue, as a threshold matter, that the Court lacks jurisdiction under 8 U.S.C. §§ 1252(g) and (b)(9) to review Petitioner's claims. Section 1252(g) states, subject to certain exceptions, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." This jurisdiction-stripping provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision." *Id.* Similarly, § 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title

4

> 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

The Federal Defendants argue that sections 1252(g) and (b)(9) preclude this Court from weighing in on active deportation cases, even for the limited purpose of evaluating whether respondents in those proceedings are entitled to bond hearings and other forms of due process.

Federal officials have raised this argument in recent months in cases similar to this one. The argument has been repeatedly rejected. *See, e.g.*, *Hasan v. Crawford*, --- F. Supp. 3d ----, 2025 WL 2682255, at *3–4 (E.D. Va. Sept. 19, 2025); *Maldonado v. Olson*, --- F. Supp. 3d ----, 2025 WL 2374411, at *5–8 (D. Minn. Aug. 15, 2025); *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 705–06 (D. Minn. 2025). This Court itself has rejected it twice. *See Barrajas v. Noem*, No. 4:25-cv-00322-SHL-HCA, 2025 WL 2717650, at *2–3 (S.D. Iowa Sept. 23, 2025); *Helbrum v. Williams Olson*, 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *3 (S.D. Iowa Sept. 30, 2025). The Court stands by this conclusion, which revolves around two things.

First, the United States Supreme Court has interpreted the jurisdiction-stripping provision of § 1252(g) narrowly to cover only the three "discrete acts" of commencing proceedings, adjudicating cases, and executing removal orders. *See Maldonado*, 2025 WL 2374411, at *5–6 (discussing *Jennings v. Rodriguez*, 583 U.S. 281 (2018) and *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)). A request for a bond hearing is not one of those three acts, but rather is "independent of, and collateral to, the removal process." *Hasan*, 2025 WL 2682255, at *4 (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)).

Second, and similarly, the Supreme Court has squarely held that § 1252(b)(9) does not deprive federal courts of jurisdiction over cases challenging whether or when bond hearings are required in removal proceedings. *See Jennings*, 583 U.S. at 292–95; *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding that § 1252(b)(9) did not prohibit judicial review of claims against federal officials for detaining aliens without bond). Holding otherwise would run the risk of "mak[ing] claims of prolonged detention [in removal proceedings] effectively unreviewable." *Jennings*, 583 U.S. at 293.

To the extent the Federal Defendants are arguing that jurisdiction does not exist because Petitioner failed to exhaust administrative remedies, the Court rejects the argument. Absent a writ of habeas corpus, Petitioner's only avenue of appeal would be to the BIA, which recently held that aliens like Petitioner who are in removal proceedings are subject to mandatory detention under

§ 1225 irrespective of the proper interpretation of § 1226(c)(1)(E)(ii). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 229. An appeal therefore would have no chance of changing Petitioner's release status, but rather would simply delay resolution of her habeas petition. Exhaustion is not required in these circumstances. *See Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *4–5 (E.D. Mich. Aug. 29, 2025) (declining to require exhaustion in similar circumstances).

For these reasons, the Court has jurisdiction over Petitioner's claims.

B. *Petitioner Is Likely to Succeed on the Merits.*

On the merits, the crucial question is whether Petitioner is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225. Section 1225(a)(1) defines "applicant for admission" to mean "[a]n alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). Detention of such an alien is mandatory pursuant to § 1225(b)(2)(A), subject only to "temporar[y] release[] on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 287–88 (quoting 8 U.S.C. § 1182). The Federal Defendants argue that Petitioner is an "applicant for admission" under § 1225 and therefore is not entitled to an immigration bond hearing. (ECF 10, p. 5.)

The threshold problem with the Federal Defendants' position is that it treats every person who enters the country without legal status as an "applicant for admission." *See Helbrum*, 2025 WL 2840273, at *4; *Barrajas*, 2025 WL 2717650, at *4; *Hasan*, 2025 WL 2682255, at *5–9; *Romero v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2403827, at *8–13 (D. Mass. Aug. 19, 2025). Such an interpretation of § 1225 would render substantial portions of § 1226 superfluous by making "detention [] mandatory for nearly every noncitizen who has entered the United States illegally." *Hasan*, 2025 WL 2682255, at *8. If this is what Congress intended, it does not make sense that it would have passed a separate provision as part of the same statutory scheme that specifically contemplates bond hearings except in enumerated situations. *See id.*; 8 U.S.C. § 1226(a). It is especially difficult to square the Federal Defendants' interpretation of § 1225(b)(2)(A) with Congress's decision earlier this year to pass the Laken Riley Act to expand the scope of mandatory detention under § 1226(a). *See Hasan*, 2025 WL 2682255, at *8; *Romero*, 2025 WL 2403827, at *11. Under the Federal Defendants' interpretation of the interplay between §§ 1225 and 1226, substantial portions of the Laken Riley Act are meaningless because the persons subject to mandatory detention under the Laken Riley Act would have been subject to mandatory detention

upon entering the country in the first place. This is not how statutes are to be interpreted, as "one of the 'most basic interpretive canons' is that 'a statute should be construed so that effect is given to all its provisions,' and 'no part will be inoperative or superfluous, void, or insignificant.'" *Hasan*, 2025 WL 2682255, at *8 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

Petitioner's likelihood of success on this issue is illustrated by the fact that most district courts have rejected the Government's position. *See Helbrum*, 2025 WL 2840273, at *4; *Barrajas*, 2025 WL 2717650, at *4; *Hasan*, 2025 WL 2682255, at *5–9; *Maldonado*, 2025 WL 2374411, at *11–13; *Romero*, 2025 WL 2403827, at *8–13. At most, the Government cites two cases that have come out differently. *See Vargas Lopez v. Trump*, --- F. Supp. 3d ----, 2025 WL 2780351, at *7–10 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, --- F. Supp. 3d ----, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025). The weight of authority, however, remains strongly on Petitioner's side. *See Barrajas*, 2025 WL 2717650, at *4 ("The overwhelming majority of these courts have concluded that aliens in Petitioner's situation are governed by § 1226(a) and therefore entitled to bond hearings.").

There is good reason why most courts have ruled in favor of aliens like Petitioner. ICE itself obviously did not believe she was subject to mandatory detention pursuant to § 1225(b)(2)(A) when it released her in September 2023 and renewed her parole in February 2025. By allowing her to be released on these occasions, ICE necessarily considered her to be governed by § 1226(a), which, subject to enumerated exceptions, makes detention discretionary for "aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289; *see also Hasan*, 2025 WL 2682255, at *6. Given this history, the Federal Defendants cannot now persuasively take the position that Petitioner was subject to mandatory detention under § 1225(a) all along. *See Helbrum*, 2025 WL 2840273, at *4 (holding in similar circumstances that federal officials' treatment of the petitioner since his arrival "unequivocally demonstrates he is detained pursuant to § 1226(a)" (quoting *Hasan*, 2025 WL 1682255, at *7)); *see also Martinez v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2084238, at *5–8 (D. Mass. July 24, 2025); *Campos Leon v. Forestal*, --- F. Supp. 3d ----, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025). .

C. The Remaining <u>Dataphase</u> Factors Weigh in Favor of Injunctive Relief.

Because the likelihood of success factor is the most important to determining whether to award injunctive relief, *see Carson*, 978 F.3d at 1059, the Court's analysis of the merits goes a long way toward making such relief appropriate. Nonetheless, the Court also will analyze the other

three *Dataphase* factors: threat of irreparable harm, balance of harms, and public interest. *See Sleep No. Corp.*, 33 F.4th at 1016 (listing factors).

As to irreparable harm, Petitioner has lived in the United States with her family for more than two years. There is no record of any criminal history or other dangerous or threatening conduct. To the contrary, the Border Patrol Agent who arrested her "did not annotate any negative actions by [Petitioner]." (ECF 11, p. 10.) Since that time, it appears that she has consistently appeared as directed to ICE offices. It is more than plausible in these circumstances that Petitioner will be granted release if given an individualized hearing. By depriving her of such a hearing, the Federal Defendants are ensuring that she will remain in custody. Her loss of liberty is a paradigmatic example irreparable harm. *See Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (describing loss of liberty as "perhaps the best example of irreparable harm"). Moreover, even if Petitioner ends up not being released on bond, the denial of her due process right to a hearing is also a form of irreparable harm. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1095 (E.D. Cal. 2025). Accordingly, this factor weighs in favor of injunctive relief.

The remaining factors, balance of harms and public interest, "merge when the Government is the party opposing the preliminary injunction." *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023). Here, they weigh in favor of injunctive relief. As noted above, the Court would not be ordering any particular outcome on bond or detention. Rather, Petitioner simply would be entitled to her statutory and due process right to a hearing. This means the Immigration Judge will have the authority—as Immigration Judges have for years—to evaluate Petitioner's history and circumstances and make an individualized decision. If public safety or some other appropriate factor warrants detention, Petitioner will remain in custody. If not, she will be released on bond. Either way, there is no meaningful "harm" to the Government from having to follow principles of due process. *See Hasan*, 2025 WL 2682255, at *12 (holding that the Government's interests were adequately protected by, *inter alia*, "the individualized determination of an [Immigration Judge] as to whether an individual should be released on bond under § 1226(a)"). To the contrary, "there is an extremely compelling public interest in *protecting* the fundamental principles of due process." *Id.* (emphasis added).

In sum, the *Dataphase* factors weigh in favor of injunctive relief in the form of ordering the Federal Defendants to provide Petitioner with a bond hearing.

## V.   CONCLUSION.

The Court GRANTS Petitioner's Motion for Preliminary Injunction. (ECF 2.) The Federal Defendants shall provide Petitioner with a bond hearing in the Immigration Court pursuant to 8 U.S.C. § 1226(a) within seven calendar days of this Order. Petitioner will not be required to provide security for the injunction, as there is no risk of harm to the Federal Defendants. Because the Court is not ordering Petitioner released, Defendant Matt McCleary, the Muscatine County Jail Administrator,[3] is not obligated to take any action beyond whatever he ordinarily would do to cooperate with federal officials to ensure Petitioner's appearance at the bond hearing and comply with the outcome of that hearing.

**IT IS SO ORDERED.**

Dated: November 3, 2025

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE

---

[3] It does not appear that McCleary was ever served with a copy of Petitioner's Petition for Writ of Habeas Corpus or Motion for Preliminary Injunction. This is likely immaterial given that Petitioner is in ICE custody despite being housed at the Muscatine County Jail. Nonetheless, in an abundance of caution, the Court urges Petitioner's counsel to serve a copy of her pleadings and this Order on McCleary to ensure there are no delays in carrying out this Order.